**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
MICROSOFT CORPORATION,

                      **Plaintiff,**

       **-against-**

COMPUTER CARE CENTER, INC., et al.,

                   **Defendants.**
-----------------------------------------------------------x

                               **REPORT AND**
                               **RECOMMENDATION**

                               **06-CV-1429 (SLT)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Currently pending before this Court, on a referral from the Honorable Sandra L.

Townes, is a motion filed by plaintiff Microsoft Corporation ("plaintiff" or "Microsoft") for

sanctions, default judgments, a permanent injunction, and monetary relief, against defendants

Computer Care Center, Inc. ("Computer Care") and Mamun Ahmed ("Ahmed") (collectively,

"defendants").  As defendants have abandoned their defense of this case and ignored their

discovery obligations and court orders, this Court recommends that default judgments be

entered against defendants, jointly and severally, awarding plaintiff statutory damages in the

amount of $240,000, attorneys' fees in the amount of $22,243, and $350 in costs.  The Court

further recommends that plaintiff's request for injunctive relief be denied, as it would be

duplicative of a pre-existing stipulated injunction between the parties.

## BACKGROUND

Plaintiff Microsoft develops, markets, distributes and licenses computer software.  <u>See</u>

Complaint ¶ 7.  One such program is Microsoft Windows XP Professional ("Windows XP

Pro"), which is an operating system.  <u>Id.</u> ¶ 8.  Another is Microsoft Office XP Professional

("Office XP Pro"), which is a suite of popular Microsoft software programs that includes Microsoft Access 2002, Microsoft Excel 2002, Microsoft Outlook 2002, Microsoft PowerPoint 2002, Microsoft Word 2002 and FrontPage 2002.  Id. ¶ 9.  Microsoft holds valid copyrights for all of these programs (including user's reference manuals, user's guides and screen displays).  Id. ¶¶ 8-9.  Windows XP Pro and Office XP Pro also bear a number of trademarks that Microsoft has registered with the United States Patent and Trademark Office.  Id. ¶ 10.

Defendant Computer Care is or was a New York corporation doing business in Flushing, New York, and over the Internet.  Id. ¶ 2.  Defendant Ahmed owns and operates Computer Care.  Id. ¶ 3.  Defendants advertise, market, install and distribute computer hardware and software, including programs covered by Microsoft's registered copyrights and bearing Microsoft's registered trademarks or imitations thereof.  Id. ¶¶ 2-3, 10.

This is the second action plaintiff has filed against defendants arising from their alleged infringing distribution of plaintiff's software.  On August 13, 2001, plaintiff filed its first action against defendants, captioned Microsoft Corp. v. Computer Care Center, Inc., and Mamun Ahmed, 01-CV-5453 (SJ) (E.D.N.Y).  Id. ¶ 12.  In that action, Microsoft alleged that defendants infringed Microsoft's copyrights and trademarks by distributing a computer system with unauthorized copies of Microsoft software installed.  Id.  On July 1, 2002, the Honorable Sterling Johnson, Jr. entered a stipulated permanent injunction prohibiting defendants from further infringing Microsoft's copyrights and trademarks.  Id.  Defendants were aware of the

terms of the injunction, as they stipulated to and signed it.[1]

On September 13, 2005, despite having been previously sued and enjoined from further infringement, defendants distributed to a Microsoft investigator (two) computer systems containing infringing Microsoft Windows XP Pro and Office XP Pro with FrontPage software. Id. ¶ 13; Transcript of 10/6/06 Initial Conference ("10/6/06 Tr.") at 10-11. Microsoft alleges that this willful infringement was not an isolated incident, but rather an ongoing business practice of defendants in violation of Microsoft's copyrights and trademarks. Complaint ¶¶ 14-18.

Plaintiff filed the complaint in this action on March 28, 2006, alleging violations of the Copyright Act, 17 U.S.C. § 505, the Lanham Act, 15 U.S.C. § 1117(a), and New York State law. On May 11, 2006, defense counsel requested a waiver of the electronic filing requirement, and Judge Townes denied the request on May 15, 2006. See 5/15/06 Endorsed Order (filed 8/30/06). A similar defense request dated August 18 was likewise denied. See 8/30/06 Endorsed Order.

On August 30, 2006, five days after the expiration of the court-ordered deadline (see 8/17/06 Order), defendants finally answered the complaint. An initial conference was held on October 6, 2006, at which defense counsel reiterated his earlier request to withdraw from his representation of defendants due to his unfamiliarity with computer technology. See 9/22/06

---

[1] Copies of the Complaint and Stipulated Injunction in the prior case are attached as Exhibits A and B to Microsoft's Request for Judicial Notice in Connection With Its Motion For Default Judgment And Permanent Injunction Against Defendants, filed December 6, 2007.

Letter from Benjamin Segal (filed 10/12/06). This Court outlined the procedures that counsel would have to follow before he would be permitted to withdraw; additionally, defendants were warned that entities are not permitted to proceed *pro se*, and that Computer Care's failure to retain counsel could result in entry of a default judgment. See 10/6/06 Calendar Order. In a letter dated October 10, 2006, defense counsel advised defendants of the Court's warning and of the need to retain new counsel. See 10/10/06 Letter from Benjamin H. Segal (filed 10/11/06). In an endorsed order entered on October 18, 2006, Judge Townes granted defense counsel's request to withdraw as attorney for defendants and ordered that new counsel appear within thirty days, or by November 16, 2006. See 10/18/2006 Endorsed Order. When no counsel appeared on behalf of Computer Care, Microsoft moved for a default judgment, and the Clerk of Court entered Computer Care's default on March 7, 2007. See 3/7/07 Clerk's Entry of Default.

Thereafter, by letter dated March 14, 2007, plaintiff requested that the Court strike defendants' answer and enter default judgments, or in the alternative, compel both of them to fulfill their discovery obligations. Plaintiff contended that defendants had failed to participate in the action. Specifically, plaintiff complained that defendants had never served their initial disclosures, responded to plaintiff's request for production or interrogatories or appeared for their depositions. See 3/14/07 Letter Motion. On March 16, 2007, this Court granted plaintiff's application in part, ordering defendants to produce their initial disclosures, answer Microsoft's interrogatories, produce documents responsive to Microsoft's requests and otherwise respond to Microsoft's requests for production by March 26, 2007. The Court's order warned defendants that default judgments might be entered against them if they failed to comply. See 3/16/07 Endorsed Order.

Defendants did not comply or respond in any manner.  See 4/2/07 Letter from James P. Doyle.  On December 6, 2007, following the withdrawal of a procedurally defective earlier motion, see 9/27/07 Minute Order, plaintiff filed the pending Motion for Sanctions, Default Judgment and Permanent Judgment.  Plaintiff seeks statutory damages in the amount of $940,000 under the Copyright and Lanham Acts, along with an award of attorneys' fees and costs in the amount of $33,848.00.  Plaintiff also asks that defendants be permanently enjoined from further infringements.  Neither defendant has responded to Microsoft's motion.

## DISCUSSION

After defendant Computer Care failed to retain substitute counsel to defend this action, the Clerk of the Court properly noted Computer Care's default.  See 3/7/07 Clerk's Entry of Default; Rowland v. Calif. Men's Colony, 506 U.S. 194, 201-02 (1993); Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1306 (2d Cir. 1991) (affirming default judgment against unrepresented partnership); see also 10/06/06 Calendar Order (warning defendants that entities are not permitted to proceed *pro se*).  In the motion now before this Court, Microsoft seeks default judgments against both defendants, including a sanction of default against defendant Ahmed for failing to participate in discovery and disobeying the Court's discovery order.[2]  For the reasons that follow, default judgments are appropriate.

---

[2]  Microsoft alleges that defendant Computer Care has likewise violated its discovery obligations and ignored court orders and that the same severe sanction of default would be warranted against the corporate defendant "had the clerk not already entered its default . . . ."  [Microsoft's] Memorandum of Law in Support of Plaintiff's Motion for Sanctions, Default Judgment, and Permanent Injunction, dated October 26, 2007 ("Pl. Mem."), at 5 n.2.  This Court agrees that its analysis as to defendant Ahmed applies with equal force to Computer Care.

# I.  Default as a Sanction Under Rule 37

Pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders.  They may include the following:  . . . (iii) striking pleadings in whole or in part; [and/or] (vi) rendering a default judgment against the disobedient party . . . ."  Fed. R. Civ. P. 37(b)(2); <u>see also</u> Fed. R. Civ. P. 37(c), (d).

This rule is not absolute, however, and culpability or intent is a primary concern in its application.  Rule 37 does not authorize a sanction terminating the case where the "failure to comply [with a pretrial production order] has been due to inability, and not to willfulness, bad faith, or any fault" on the part of the party against whom sanctions are sought.  <u>Societe Int'l v. Rogers</u>, 357 U.S. 197, 212 (1958).  Concurrently, the propriety of the entry of a default judgment is also a matter of degree.  Standing alone, a single pretrial violation, such as a failure to timely respond to a document request, "would not ordinarily result in an imposition of a sanction of such finality as striking defendants' answer and entering judgment by default."  <u>U.S. Freight Co. v. Penn Cent. Transp. Co.</u>, 716 F.2d 954, 954-55 (2d Cir. 1983) (citing <u>Link v. Wabash R.R.</u>, 370 U.S. 626, 634 (1962)).

On the other hand, while dispositive relief is a severe sanction that should be granted only sparingly, a "continuing saga of dilatory conduct" will meet the threshold for entering a default judgment under Rule 37.  <u>U.S. Freight</u>, 716 F.2d at 955.  The entry of a default judgment as a sanction is appropriate in the face of willful misconduct, "to achieve the purpose

of Rule 37 as a credible deterrent 'rather than a paper tiger.'" <u>Update Art Inc. v. Modiin Publ'g, Ltd.</u>, 843 F.2d 67, 70-71 (2d Cir. 1988) (upholding judgment in favor of plaintiff on copyright claims where defendants acted in bad faith and refused to comply with discovery orders) (quoting <u>Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.</u>, 602 F.2d 1062, 1064 (2d Cir. 1979)). "Here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." <u>Sieck v. Russo</u>, 869 F.2d 131, 134 (2d Cir. 1989) (citation omitted).

Ultimately, the imposition of litigation-ending sanctions under Rule 37 is a matter of judicial discretion. <u>See</u> <u>Nat'l Hockey League v. Metro. Hockey Club</u>, 427 U.S. 639, 640 (1976) (upholding dismissal of the complaint where "the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents."). The three primary factors that should inform that exercise of discretion are: (1) the defendant's fault or willfulness; (2) the adequacy of notice; and (3) the efficacy of lesser sanctions. <u>Bambu Sales, Inc. v. Ozak Trading Inc.</u>, 58 F.3d 849, 852 (2d Cir. 1995). Measured against these standards, defendants' course of conduct warrants entry of default judgments.

With respect to fault and willfulness, defendants declined to participate in discovery, disregarding multiple warnings and orders. Ahmed and the corporate defendant failed to serve initial disclosures in this case, failed to respond to written discovery requests and failed to

appear for noticed depositions. On March 16, 2007, the Court directed defendants to provide

initial disclosures and the requested discovery by March 26, 2007, warning that their non-

compliance with that order could result in sanctions, including default judgments. <u>See</u> 3/16/07

Endorsed Order. In spite of this warning, neither defendant has ever responded to discovery

requests, produced a single document or provided initial disclosures. <u>See</u> Declaration [of

James P. Doyle] in Support of Motion for Sanctions, Default Judgment and Permanent

Injunction ("Doyle Decl.") ¶¶ 13-14. "Courts do not look favorably upon parties that fail to

respond to court orders or remain silent in the face of repeated discovery requests." <u>MCI</u>

<u>Worldcom Commc'ns, Inc. v. Gamma Commc'ns Group, Inc.</u>, 204 F.R.D. 259, 262

(S.D.N.Y. 2001) (entering default judgments where defendants failed to respond in any way to

the court's orders or discovery requests). Here, defendants' continued disregard of the Court's

orders to provide discovery demonstrates that they willfully opted not to continue to defend this

action, which warrants the sanction of default.

With respect to the adequacy of notice, both defendants were provided several warnings

regarding their required participation in this lawsuit. <u>See</u> 3/16/07 Endorsed Order

("Defendants are warned that, if they fail to timely comply, sanctions may be imposed and/or

default judgments entered against them."); <u>see also</u> 10/06/2006 Calendar Order ("Defendants

are warned that entities are not permitted to proceed *pro se* . . . and if Computer Care does

not retain new counsel, a default judgment may be entered against it."). Repeated warnings

that conduct will lead to the imposition of sanctions, coupled with ample time and opportunities

to respond, warrant dispositive relief. <u>See</u> <u>Update Art</u>, 843 F.2d at 72.

Finally, as demonstrated by analogous cases in which default judgments were entered, lesser sanctions are not appropriate here.  See, e.g., MCI Worldcom Commc'ns, 204 F.R.D. at 262 ("While the court has many possible sanctions at its disposal, the fact that defendants have failed to respond in any way to this court's orders or discovery requests indicates the ultimate sanction - striking of the Answer and entry of a default judgment - is an appropriate sanction."); Update Art, 843 F.2d at 73; El-Yafi v. 360 East 72nd Owners Corp., 164 F.R.D. 12, 17 (S.D.N.Y. 1995) ("Although entry of a default judgment for violation of a discovery order is an extreme sanction, it has long been recognized as appropriate where the failure is willful and the discovery sought is material to the adverse party.").  Indeed, "[i]n this circuit, courts have dismissed actions where only one discovery order is violated or where a party has demonstrated willful disrespect for discovery obligations."  Altschuler v. Samsonite Corp., 109 F.R.D. 353, 357 (E.D.N.Y. 1986) (third-party complaint dismissed and default judgment entered against defendant for failing to produce documents, respond to interrogatories or comply with discovery order) (citations omitted).

Here, the only reasonable inference is that in ignoring the Court's orders, defendants willfully abandoned their defense of this case.  They have neither conducted discovery nor allowed Microsoft to do so.  Less harsh sanctions, such as orders compelling defendants to participate, have already proven fruitless.  Under the circumstances, the appropriate sanction is one that resolves the action by striking defendants' answer and entering default judgments pursuant to Rule 37.

## II. The Sufficiency of the Complaint

Where as here defaults are entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)); see Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). In other words, a party's default is almost universally deemed an admission of the plaintiff's well-pleaded allegations of fact pertaining to liability. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006); In re Crazy Eddie Secs. Litig., 948 F.Supp. 1154, 1160 (E.D.N.Y. 1996). This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend. See Bambu Sales Inc., 58 F.3d at 854 (holding that Rule 37 default established liability); Jacobson v. Artemis Elec. Servs., Inc., No. 04-CV-2567 (ARR)(WP), 2007 WL 3232514, at *2 (E.D.N.Y. Nov. 1, 2007) (corporate defendant failed to retain counsel); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (after a Rule 55 default for failure to plead or otherwise defend, the court accepts as true all of the factual allegations of the complaint, except those relating to damages).

Nevertheless, claims that are not well-pleaded, or facts not established by the pleadings, are not binding and cannot support a judgment. Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); see Am. Centennial Ins. Co. v. Seguros La Republica, S.A., No. 91 Civ. 1235 (MJL), 1996 WL 304436, at *18 (S.D.N.Y. June 5, 1996). Moreover, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." In re Wildlife Ctr.,

Inc., 102 B.R. 321, 325 (E.D.N.Y. 1989) (citation omitted). Therefore, it falls to the Court to

determine whether the complaint in this case contains well-pleaded causes of action. In that

connection, "[o]nly 'in very narrow, exceptional circumstances' may a court find an allegation

not 'well pleaded.'" In re Crazy Eddie, 948 F.Supp. at 1160 (quoting Trans World Airlines

Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971) (internal quotation omitted), rev'd on other

grounds, 409 U.S. 363 (1973)).

    Such narrow, exceptional grounds are not present here, and thus the allegations should

be taken as fact. Furthermore, the facts alleged in Microsoft's complaint and described above

establish its claims of copyright infringement, trademark infringement and false designation of

the software's origin. Specifically, defendants distributed unauthorized copies of Windows XP

Pro and Office XP Pro, computer software programs covered by Microsoft's registered

copyrights and bearing Microsoft's registered trademarks or imitations thereof. See Complaint

¶¶ 11, 13. Such actions are likely to cause consumer confusion as to the source of the

software distributed. Id. ¶ 31. Defendants thus willingly infringed Microsoft's copyrights and

trademarks pursuant to 17 U.S.C. § 501 et seq. and 15 U.S.C. § 1114. See Microsoft Corp.

v. Sellers, 411 F.Supp.2d 913, 918-19 (E.D. Tenn. 2006) (distribution of unauthorized copies

of Microsoft software constituted infringement under the Copyright and Lanham Acts);

Microsoft Corp. v. Compusource Distribs., Inc., 115 F.Supp.2d 800, 805-07 (E.D. Mich.

2000). Those distributions further constituted false designations of the origin and sponsorship

of the infringing copies of that software, in violation of 15 U.S.C. § 1125(a) of the Lanham

Act. See Microsoft v. Sellers, 411 F.Supp.2d at 919; Microsoft v. Compusource, 115

F.Supp.2d at 807.

In addition, the analysis under the Lanham Act for trademark infringement also applies to claims of unfair competition under New York common law.  Tri-Star Pictures, Inc. v. Unger, 14 F.Supp.2d 339, 363-64 (S.D.N.Y. 1998); Baker v. Parris, 777 F.Supp.2d  299, 304 (S.D.N.Y. 1991).  Therefore, defendants' acts of distributing infringing Microsoft software constitute unfair competition pursuant to the common law of New York.

### III. Individual Liability of Ahmed

An individual who actively participates in infringement cannot hide behind a corporate shield and is personally liable for all infringing acts that he has committed.  Bambu Sales, Inc. v. Sultana Crackers, Inc., 683 F.Supp.2d 899, 913 (E.D.N.Y. 1988).  Where the facts show that a corporate employee was the "moving, active conscious force behind [the defendant corporation's] infringement," personal liability will attach.  Id. (quoting Polo Fashions, Inc. v. Branded Apparel Merch., 592 F.Supp. 648, 652 (D. Mass. 1984)); accord Cartier v. Aaron Faber Inc., 512 F.Supp.2d 165, 170 (S.D.N.Y. 2007).  Additionally, an individual who has infringed a mark under the Lanham Act "has necessarily also done so under New York State and common law . . . ."  Baker, 777 F.Supp.2d at 304.

Here, Ahmed should be held individually liable because, accepting as true the complaint's factual allegations, he owns, operates and controls Computer Care and personally participated in the wrongful conduct complained of.  See Complaint ¶ 3.  He need not have dealt directly with the investigator; so long as he knowingly induced or caused the infringing activity, he may be liable as a "contributory infringer."  See Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 693, 706 (2d Cir. 1998); Microsoft v. Sellers, 411 F.Supp.2d at 920; Microsoft Corp. v. Grey Computer, 910 F.Supp. 1077, 1090 (D. Md. 1995); Power Test

Petroleum Distribs., Inc. v. Manhattan & Queens Fuel Corp., 556 F.Supp. 392, 394-95 (E.D.N.Y. 1982) (McLaughlin, J.).

Alternatively, Ahmed should be held vicariously liable for the infringing activities complained of. One is vicariously liable for the infringing conduct of another where one has the right and ability to supervise the infringing activity and has a direct financial interest in such activity. See Microsoft v. Sellers, 411 F.Supp.2d at 920; Microsoft v. Grey Computer, 910 F.Supp.2d at 1090-91; Banff Ltd. v. Limited, Inc., 869 F.Supp. 1103, 1107 (S.D.N.Y. 1994). According to the complaint, Ahmed had the ability to supervise the infringing activity and had a direct financial interest in the business. See Complaint ¶ 3. Furthermore, Ahmed was previously sued for infringing Microsoft's intellectual property rights and signed a stipulated injunction; he nevertheless distributed infringing software to an investigator. Id. ¶¶ 11-12. Ahmed ought to have been vigilant about the products being sold in his shop, especially regarding Microsoft products and infringement issues. He therefore is jointly and severally with Computer Care for the conduct complained of. See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971).

## IV. Damages

Microsoft does not seek actual damages, but instead requests $940,000 in statutory damages for defendants' copyright and trademark infringement. See Pl. Mem. at 10, 13. Microsoft argues that it has been denied the opportunity to conduct discovery to determine the full extent of defendants' willful infringement and the amount of its actual damages based on defendants' profits. Id.

**A. Statutory Provisions of the Copyright and Lanham Acts**

The Copyright Act and Lanham Act both contain provisions authorizing an award of statutory damages in lieu of actual damages. 17 U.S.C. § 504(c); 15 U.S.C. § 1117(c). Statutory damages may be awarded under the Copyright Act from $750 to $30,000 per work infringed, whether willful or not, and enhanced damages up to $150,000 per willful infringement. 17 U.S.C. § 504(c). Similarly, statutory damages for trademark infringement are available from $500 to $100,000 per infringement, regardless of willfulness, and enhanced up to $1,000,000 per mark if the infringement is willful. 15 U.S.C. § 1117(c).

Under neither act does the assessment of an award of statutory damages require proof of actual damages. See, e.g., F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 232-33 (1952) ("Even for injurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy [of discouraging infringement]."). Indeed, the statutory damage provision for trademark infringement, section 1117(c), was added in 1995 for the very reason that "counterfeit records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible." Tiffany (NJ) Inc. v. Luban, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003) (quoting S.Rep. No. 104-177, at 10 (1995)). Thus, statutory damages are especially fitting in default judgment cases due to infringer nondisclosure. See Sara Lee Corp. v. Bags of N.Y., Inc., 36 F.Supp.2d 161, 165 (S.D.N.Y. 1999) (awarding statutory damages after defendants failed to appear and defend trademark case); see also Tiffany, 282 F.Supp.2d 123 (Lanham Act); Fitzgerald Publ'g Co. v.

Baylor Publ'g Co., 807 F.2d 1110,1115 (2d Cir. 1986) (Copyright Act) (citing Fallaci v. New Gazette Literary Corp., 568 F.Supp. 1172, 1174 (S.D.N.Y. 1987)); Original Appalachian Artworks Inc. v. Yuil Int'l Trading Corp., 5 U.S.P.Q.2d 1516, 1524 (S.D.N.Y. 1987) (Copyright Act).

### B.  Dual Recovery

Relying on cases from outside this Circuit, Microsoft argues that "[a] successful plaintiff is entitled to recover a separate award of statutory damages under both the Copyright Act and the Lanham Act when a defendant has infringed both its trademarks and copyrights, even when by a single act."  Pl. Mem. at 12 (citing Microsoft Corp. v. Tierra Computer, Inc., 184 F.Supp.2d 1329, 1331 (N.D. Ga. 2001), and Microsoft Corp. v. McGee, 490 F.Supp.2d 874, 881-82 (S.D. Ohio 2007)).  However, the law in this Circuit does not support Microsoft's demand for dual recovery in this case.

As the Second Circuit has repeatedly cautioned, "[a] plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery."  Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1997); see Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 720 (2d Cir. 1992) (holding that a party "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are co-extensive."); Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 969-70 (2d Cir. 1997) (computer software creator was not entitled to additional damages for trade secret misappropriation where district court found that such damages were co-extensive with those awarded for copyright infringement); see also Sparaco

v. Lawler, Matusky, Skelly Eng'rs, LLP, 313 F.Supp.2d 247, 255 (S.D.N.Y. 2004) (plaintiff's settlement of his contract claim eliminated his right to recover actual or statutory damages for copyright infringement, as "[t]he harm being compensated by the settlement is the harm from copying" and thus "the damages are duplicative."); id. at 250 ("A plaintiff is not entitled to recover twice for the same injury.").

To be sure, while acknowledging the aforesaid principles, a court in this Circuit nonetheless awarded a plaintiff statutory damages for copyright infringement as well as the infringer's profits under the Lanham Act. See Lyons P'ship, L.P. v. AAA Entm't, No. 98Civ.0475DABM4D, 1999 WL 1095608, at *8-10 (S.D.N.Y. Dec. 3, 1999). The Lyons court reasoned that, under the circumstances presented, the two awards were not duplicative because "the statutory award under the Copyright Act is designed to serve purposes other than disgorgement of unjust enrichment," specifically, deterrence and punishment. Id. at *10; see also Nintendo of America, Inc. v. Dragon Pacific Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994) (allowing award of actual damages under the Lanham Act and statutory damages under the Copyright Act).

Here, in contrast, Microsoft is seeking to recover two separate awards of statutory damages for the same injury -- i.e., harm caused by defendants' unauthorized copying of the same software. Under these circumstances, an award of statutory damages under both the Lanham and Copyright Acts would constitute impermissible dual recovery.

Indeed, in a case involving materially indistinguishable facts, a court in this district rejected Microsoft's request for an award of statutory damages under both the Copyright and

Lanham Acts.  See Memorandum and Order in Island Software & Computer Serv., Inc. v. Microsoft Corp., 01-CV-750 (WDW), slip op. at 35 (E.D.N.Y. Jan. 24, 2003) (hereinafter "Island Software I"),[3] aff'd in part, vacated in part on other grounds, 413 F.3d 257 (2d Cir. 2005).  After surveying the case law, the court concluded that, although the alleged infringers "may have committed 'two wrongs,' under the separate statutory schemes governing trademark and copyright, those wrongs here produced one harm -- Microsoft's economic loss."  Id. (citation omitted).  The court therefore ruled in Island Software I that "dual awards of statutory damages under both the Copyright and Lanham Acts would constitute an impermissible double recovery under the facts of this case."  Id.[4]

So too here, Microsoft is seeking compensation for the same injury under different theories, and thus is entitled to only one recovery.  Like the court in Island Software I, this Court would award Microsoft statutory damages under the Copyright Act only.  See id. at 36.[5]

_____

[3]  The Memorandum and Order in  Island Software is not paginated. In assigning sequential page numbers for ease of reference, this Court has excluded the cover page.

[4]  Significantly, in the wake of the adverse ruling in  Island Software I, Microsoft for a period of time dropped its demand for dual recovery in similar cases in this district and sought only statutory damages under the Copyright Act.  See, e.g., Report and Recommendation in Microsoft Corp. v. United PC Prods., Inc., 04CV1801, slip op. at 3 & n.1 (E.D.N.Y. Nov. 3, 2004), *adopted by District Court*, Order (E.D.N.Y. Dec. 6, 2004); Report and Recommendation in Microsoft Corp. v. Happy Days Computer System, Inc., 02 CV 3904 (NGG)(RML), slip op. at 3 n.4 (E.D.N.Y. July 22, 2003), *adopted by District Court*, Order (E.D.N.Y. Feb. 9, 2004).

[5]  This Court's research has uncovered only one opinion from this Circuit in which a party was awarded statutory damages under both the Copyright and Lanham Acts for the same unauthorized copying.  See Microsoft Corp. v. Black Cat Computer Wholesale, Inc., 269  F.Supp.2d 118, 123-24 (W.D.N.Y. 2002).  For the reasons discussed above, this Court respectfully declines to follow Black Cat's analysis or adopt its interpretation of cases such as Lyons and Nintendo. Interestingly, the same district court judge and magistrate judge who decided Black Cat recently rejected its
(continued...)

## C. Assessing Statutory Damages

Microsoft requests the maximum amount of statutory damages available for non-willful copyright infringement. Specifically, Microsoft seeks statutory damages of $30,000 for each of its eight copyrights at issue, for a total of $240,000 in statutory damages under the Copyright Act.[6] See Pl. Mem. at 13.

Under the Copyright Act, the Court has substantial discretion to award statutory damages anywhere within the statutory range for each work infringed, and is limited only by what "the court considers just." 17 U.S.C. § 504(c); see Island Software, 413 F.3d at 265; N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.Supp. 250, 252 (2d Cir. 1992); Arclightz & Films Pvt. Ltd. v. Video Palace Inc., 303 F.Supp.2d 356, 360 (S.D.N.Y. 2003); Video Aided Instruction, Inc. v. Y&S Express, Inc., No. 96 CV 518 CBA, 1996 WL 711513, at *3 (E.D.N.Y. Oct. 29, 1996). Nevertheless, "[t]o the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'" Gucci v. Duty Free Apparel, Ltd., 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) (quoting 4 Melville B. Nimmer &

---

[5](...continued)
reasoning *sub silentio*. Muscletech Research & Ingredients, LLC v. East Coast Ingredients, LLC, No. 00-CV-753A, 2007 WL 655755, at *5 (W.D.N.Y. Feb. 26, 2007) ("Plaintiffs may not . . . recover separate awards for both its trademark violations and copyright infringement claims but, rather, must elect between the two theories to avoid a double recovery.") (citing Indu Craft, 47 F.3d at 497, and Computer Assocs., 982 F.2d at 720).

[6] The eight copyrights at issue are TX 5-407-055 for "Windows XP Professional"; TX 5-329-272 for "Office XP Professional"; TX 5-321-421 for "Access 2002"; TX 5-318-231 for "Excel 2002"; TX 5-321-422 for "Outlook 2002"; TX 5-318-232 for "PowerPoint 2002"; TX 5-321-425 for "Word 2002"; and TX 5-321-423 for "Front Page 2002." See Complaint ¶ 8 and accompanying exhibits. Microsoft also demands statutory damages of $100,000 for each of seven trademarks, see Pl. Mem. at 13 & n.13, but, for the reasons previously discussed, Microsoft's demand for a dual recovery should be denied.

David Nimmer, <u>Nimmer on Copyright</u> § 14.04[E][1], at 14-69 (2003)).  Consequently, courts

in this Circuit look to factors such as: (1) "the expenses saved and the profits reaped;" (2) "the

revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on

others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;"

(6) "whether a defendant has cooperated in providing particular records from which to assess

the value of the infringing material produced;" and (7) "the potential for discouraging the

defendant."  <u>Fitzgerald Publ'g</u>, 807 F.2d at 1117.

       Microsoft provides no information whatsoever as to the first three factors.  The known

facts are these: on or about September 13, 2005, a Microsoft investigator purchased two new

computer systems with unauthorized copies of Windows XP Pro and Office XP Pro installed.

<u>See</u> Complaint ¶ 13; 10/6/06 Tr. at 10-11.  These copies of Microsoft programs were not,

strictly speaking, counterfeit, but rather were unauthorized copies of authentic Microsoft

programs.  10/6/06 Tr. at 12.

       As for defendants' state of mind -- one of the *Fitzgerald* factors -- plaintiff points to

circumstantial evidence supporting a finding of willfulness.[7]  The Court may infer that

defendants' infringement was willful from their failure to continue to defend this lawsuit.  <u>See</u>

<u>Tiffany</u>, 282  F.Supp.2d at 124 ("By virtue of the default, the [defaulting party's] infringement

is deemed willful").  In addition, defendants were previously sued by Microsoft for unlawful

infringement, and stipulated to an injunction that prohibited further infringement of Microsoft's

copyrights and trademarks.  Nevertheless, defendants continued to engage in the kind of

---

[7]  Notably, however, plaintiff does not seek enhanced statutory damages for willful violations.

misconduct for which they had been previously sued, distributing infringing software. Having

been placed on notice of the need to respect Microsoft's copyrights and trademarks,

defendants' subsequent acts of infringement may be deemed to be willful. See WB Music

Corp. v. Symetry Enters., LLC, No. 3:06CV01214 (MRK)(WIG), 2007 WL 2126361, at *2

(D. Conn. June 26, 2007) (defendants deemed to have acted willfully in persistently refusing to

obtain a license despite repeated reminders from plaintiff that the unauthorized public

performances of copyrighted songs constituted infringement); see also Broadcast Music, Inc. v.

R Bar of Manhattan, Inc., 919 F.Supp. 656, 660 (S.D.N.Y. 1996) (willfulness inferred where

plaintiff wrote to defendants on ten occasions and spoke with persons associated with the

establishment's operation over 20 times in an effort to tell defendants the requirements of the

Copyright Act).

As for the remaining *Fitzgerald* factors, defendants did not cooperate in discovery (Pl.

Mem. at 4), and a potent deterrent is especially warranted here, given defendants' disregard of

the earlier injunction. Microsoft Corp. v. Tierra Computer, Inc., 184 F.Supp.2d at 1332-33.

Nevertheless, Microsoft's demand for $940,000 in statutory damages is excessive. The

$940,000 figure represents the maximum (unenhanced) combined recovery under both the

Lanham and Copyright Acts. However, as this Court already ruled, Microsoft may not

recover statutory damages under both statutes. See *infra* pp. 15-17. Microsoft's reliance on

amounts awarded under the two statutes in several out-of-circuit cases is therefore misplaced.

See Pl. Mem. at 14; Microsoft v. McGee, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007)

(awarding $210,000 under the Copyright Act and $500,000 under the Lanham Act); Microsoft

v. Sellers, 411 F.Supp.2d 913, 921 (E.D. Tenn. 2006) (awarding $60,000 under the Copyright Act and $400,000 under the Lanham Act).

As previously discussed, in Island Software I, which applied Second Circuit law, the court disallowed a dual recovery and awarded statutory damages under the Copyright Act alone. Island Software I, slip op. at 35-36. On remand from the Second Circuit, the lower court reduced its award from $30,000 to $15,000 for each of eight copyright infringements, for a total award of $120,000. Island Software & Computer Serv., Inc. v. Microsoft Corp., No. CV01-750(WDW), 2006 WL 1025915, at *1 (E.D.N.Y. Apr. 13, 2006).[8]

In this case, disregarding Microsoft's demand for damages under the Lanham Act, Microsoft is seeking to recover $30,000 for each of eight copyrighted works, or $240,000. Having considered the facts of this case, and analogous caselaw, this Court concludes that, in order to punish defendants for violating the agreed-upon stipulation, and to deter them and others from engaging in infringing activities in the future, Microsoft is entitled to an award of the maximum allowable amount of unenhanced statutory damages. See Stevens v. Aeonian Press, Inc., No. 00 Civ. 6330 (JSM), 2002 WL 31387224, at *2 (S.D.N.Y. Oct. 23, 2002) (awarding $30,000 for each of 16 literary works infringed, for a total award of $480,000). Unlike the summary judgment context in Island Software, willfulness can be assumed on a default judgment as a matter of law. See Tiffany, 282 F.Supp.2d at 124. Hence, in other cases in this district involving defaulting defendants who continued to distribute infringing

---

[8] The Second Circuit had vacated the original award of $240,000 on the ground that the lower court had entered summary judgment on willfulness prematurely. Island Software, 413 F.3d at 263-65.

Microsoft software after receiving written demands to cease infringing activity, courts have awarded Microsoft the maximum amount of unenhanced statutory damages, i.e., $30,000 per infringement.  See Microsoft Corp. v. United PC Prods., slip op. at 4-5; Microsoft Corp. v. Happy Days Computer System, slip op. at 8.[9]

Microsoft may well argue that, even if the Court disallows a dual recovery, it should award Microsoft statutory damages under the Lanham Act rather than the Copyright Act.  In contrast to the $30,000 maximum for each copyrighted work infringed, Congress has authorized an (unenhanced) award of up to $100,000 for each trademark violation, see 17 U.S.C. § 504(c), and Microsoft complains of seven infringements in this case.  See Pl. Mem. at 13 & n.3.

Looking to the *Fitzgerald* factors for guidance (see Tiffany, 282  F.Supp.2d at 125), the Court concludes that an award of statutory damages as high as $700,000 is unwarranted.[10] Plaintiff makes no attempt to quantify any actual loss suffered or to provide evidence as to the frequency of the infringement.  See Impulsive Music, Inc. v. Bryclear Enters., LLC, 483 F.Supp.2d 188, 190-91 (D. Conn. 2007) (awarding reduced statutory damages for copyright violations based on the lack of such proof).  Absent additional evidence of the frequency of such violations, an award of $700,000 overstates the severity of the wrongdoing here, which involves the sale of two computer systems in a single transaction -- albeit by a business

_____

[9]  In Happy Days, the court also awarded an additional $10,000 per violation in enhanced damages, an element not sought in this case.  See Happy Days, slip op. at 8.

[10]  The Court enjoys the same broad discretion under the Lanham Act as under the Copyright Act. See 15 U.S.C. § 1117(c); Phillip Morris USA Inc. v. Marlboro Express, No. CV-03-1161 (CPS), 2005 WL 2076921, at *6 (E.D.N.Y. August 26, 2005); Sara Lee, 36 F.Supp.2d at 166.

previously sued by Microsoft. The scope of the misconduct in this case is more limited than that in other cases cited by Microsoft. See Pl. Mem. at 14; Tiffany, 282 F.Supp.2d at 125 (awarding $550,000 under the Lanham Act, where plaintiff identified 28 separate counterfeit Tiffany items on defendant's website, each of which allegedly infringed upon at least four Tiffany trademarks); Arista Records, Inc. v. Beker Enters, Inc., 298 F.Supp.2d 1310, 1314 (S.D. Fla. 2003) (awarding $35,000 for each of 54 trademark infringements, for a total award of $1,890,000).

Accordingly, even if the Court were to assess statutory damages under the Lanham Act in lieu of the Copyright Act, the total amount should not be increased. The Court concludes that an award of $240,000 is just and proper, in that it would adequately compensate Microsoft and punish and deter Computer Care and Ahmed.

### V. Permanent Injunction

In addition to statutory damages, Microsoft also requests a permanent injunction to prevent any future infringements of its copyrights and trademarks. See Pl. Mem. at 14; [Proposed] Permanent Injunction ("Proposed Perm. Inj."). The Copyright Act and Lanham Act both permit the issuance of permanent injunctions to prevent future violations. 17 U.S.C. § 502(a); 15 U.S.C. § 1116. The risk of future violations is particularly acute here because, as Microsoft notes, defendants' infringement continued even after 2002, when they settled a prior infringement lawsuit brought by Microsoft. See Pl. Mem. at 16.

Nevertheless, Microsoft's request for injunctive relief overlooks the existence of the Stipulated Permanent Injunction ("Stip. Perm. Inj.") pursuant to which defendants agreed in

2002 to cease infringing Microsoft's registered trademarks and copyrights.  See Stip. Perm. Inj. (Docket Entry #23) in Microsoft Corp. v. Computer Care Center, Inc., and Mamun Ahmed, 01-CV-5453 (SJ) (E.D.N.Y. July 9, 2002).  That Stipulated Permanent Injunction is of unlimited duration and remains in effect.  Instead of requesting further injunctive relief in this case, Microsoft could have sought to hold defendants in civil contempt for violating the earlier injunction.[11]  In these circumstances, "[t]his Court cannot see how yet another injunction would serve any useful purpose."  Turner v. Am. Bar Ass'n, 407 F.Supp. 451, 482 (D. Ala. 1975) (denying motion for injunction where two such injunctions had already been issued in cases assigned to other judges); see also Breswick & Co. v. Briggs, 135 F.Supp. 397, 402 (S.D.N.Y. 1955) (where the conduct for which an injunction was sought had already been enjoined in another matter, "there is . . . no need for an additional injunction issued in this proceeding.").  The District Court should therefore deny Microsoft's request on the ground that plaintiff has "not demonstrated that [it] is entitled to additional injunctive relief."  Howard

---

[11]  To be sure, in its Proposed Permanent Injunction, which is otherwise virtually identical to the prior injunction, Microsoft has identified a number of newer registered trademarks and copyrights that were not included in the earlier document.  Compare Proposed Perm. Inj. ¶ (a) with Stip. Perm. Inj. ¶ (a).  However, the Stipulated Permanent Injunction, like Microsoft's recent proposal, contains broad language prohibiting infringing activities beyond those involving the specifically enumerated marks and copyrights.  See, e.g., Stip. Perm. Inj. ¶¶ (a)-(c) (enjoining infringement of "Microsoft's registered trademarks and service mark, including, but not limited to," the specified registrations); id. ¶ (d) (prohibiting defendants from "engaging in any other activity constituting an infringement of Microsoft's registered trademarks, service mark and/or copyrights").  This open-ended language therefore encompasses Microsoft's newer trademarks and copyrights.  See Howard v. St. Louis-San Francisco Ry. Co., 244 F.Supp. 1008, 1014 (E.D. Mo. 1965) (no need for new injunctive relief where judgment in earlier case continued to enjoin defendants "from using not only the 1946 agreement but 'any other discriminatory bargaining device'").

Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 516 F.Supp.2d 324, 335 (D. Del. 2007) (citing

Harthman v.Witty, 480 F.2d 337, 339-40 (3d Cir. 1973) (concluding that "a second injunction

was unnecessary and it would have been the duty of the court to refuse to grant it")); accord

Howard v. St. Louis-San Francisco Ry. Co., 244 F.Supp. 1008, 1014 (E.D. Mo. 1965) ("If

complainant has obtained an injunction in one court and that injunction is still in force, a

second injunction in that or in another court will be refused.") (citation omitted).

## VI.  Attorneys' Fees and Costs

Plaintiff seeks to recover $33,348 in attorneys' fees and $500 in costs incurred in the

prosecution of this action.  See Doyle Decl. ¶¶ 1-5, 20-28.  Both the Copyright Act and

Lanham Act authorize courts to award prevailing parties their reasonable costs and attorneys'

fees.  17 U.S.C. § 505; 15 U.S.C. § 1117(a).  The Lanham Act authorizes an award of

attorney fees to the prevailing party in "exceptional cases." 15 U.S.C. §1117(a).  Courts in

copyright infringement cases do not award fees "as a matter of course," but rather evaluate the

"frivolousness, motivation, objective unreasonableness . . . and the need in particular

circumstances to advance considerations of compensation and deterrence."  Fogerty v.

Fantasy, Inc., 510 U.S. 517, 533, 535 n.19 (1994) (internal quotation marks omitted); see also

Matthew Bender v. West Publ'g, 240 F.3d 116, 121 (2d Cir. 2001).  No precise rule or

formula cabins the Court's discretion in determining whether to award costs and attorneys' fees

to the prevailing party under the Copyright Act.  Fogerty, 510 U.S. at 534.

Having considered the relevant factors, this Court concludes that fees and costs should

be awarded under the Copyright Act, and thus the Court need not determine whether the case

is so "exceptional" as to warrant such an award under the Lanham Act.  See, e.g., Viacom Int'l, Inc. v. Fanzine Int'l, Inc., No. 98CIV.7448(RCC), 2001 WL 930248, at *7 n.3 (S.D.N.Y. Aug. 16, 2001) (granting fees under Copyright Act and declining to consider fees under Lanham Act).  Under the Copyright Act, an award of fees is appropriate to promote the goal of deterrence where the evidence supports a finding of willfulness.  See Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999); see also U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc., No. 04-CV-1233 (DLC), 2005 WL 1231645, at *7 (S.D.N.Y. May 25, 2005); Peer Int'l Corp. v. Max Music & Entm't, Inc., No. 03-CV-0996 (KMW/DF), 2004 WL 1542253, at *5 (S.D.N.Y. July 9, 2004); Stevens v. Aeonian Press, Inc., No. 00-CV-6330 (JSM), 2002 WL 31387224, at *4 (S.D.N.Y. Oct. 23, 2002).  Here, willfulness may be inferred from defendants' default, see Entral Group Int'l, LLC v. Honey Café on 5th, Inc., No. 05-CV-2290 (NGG/MDG), 2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) (awarding fees), particularly given their continued infringing activity despite the Stipulated Permanent Injunction.  See Kepner-Tregoe, 186 F.3d at 289.

Defendants' objectively unreasonable litigation position provides yet another basis for shifting Microsoft's fees to them.  See generally Matthew Bender, 240 F.3d at 121; Stevens, 2002 WL 31387224, at *4 n.2.  Prevailing parties are frequently awarded fees where, as here, the opponents "refus[ed] to participate in discovery in any meaningful way."  U2 Home v. Lai Ying Music, 2005 WL 1231645, at *7; see Viacom, 2001 WL 930248, at *6.

Accordingly, Microsoft should be awarded reasonable fees under the Copyright Act.

## A. Hourly Rate

The Supreme Court has stated that "[i]t is central to the awarding of attorney's fees . . . that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." Blanchard v. Bergeron, 489 U.S. 87, 96 (1989). In making that assessment, courts in the Second Circuit apply the "presumptively reasonable fee" method (formerly the "lodestar" method), multiplying the number of hours reasonably expended on the case by a reasonable hourly rate. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 163 (2d Cir. 2007), *amended by* 493 F.3d 110 (2d Cir. 2007).

As the Second Circuit has made clear, the calculation of a reasonable hourly rate requires the Court to consider a variety of factors, including the twelve enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Arbor Hill, 484 F.3d at 166 n.1, 169. These factors include (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the scope of the misconduct and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19. "The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill, 484 F.3d at 169.

Rates are generally, but not always, evaluated in comparison to the prevailing rate in the district in which the court sits. "Sometimes, legal markets may be defined by practice area," in which case the Court "may adjust this base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel." Arbor Hill, 484 F.3d at 171, 163. This principle applies with particular force to cases litigated in federal court in Brooklyn (in the Eastern District of New York) by counsel located in the same city (New York), but in the borough of Manhattan (in the Southern District of New York). Because of this anomaly, federal courts in Brooklyn often look to hourly rates approved in the Southern District of New York for comparison. See Entral Group Int'l, LLC v. Sun Sports Bar Inc., No. 05-CV-4836 (CBA), 2007 WL 2891419, at *10 (E.D.N.Y. Sept. 28, 2007); BMG Music v. Pena, No. 05-CV-2310 (RJD) (MDG), 2007 WL 2089367, at *7 (E.D.N.Y. July 19, 2007).

Microsoft is represented in this case by the Manhattan law office of Axinn, Veltrop & Harkrider LLP ("AVH"), a small law firm with experience handling intellectual property litigation. See Pl. Mem. at 16-17. AVH charged Microsoft hourly rates of $450 (in 2006) and $500 (in 2007) for work performed by James P. Doyle, the partner handling the matter, and $385 and $250 for the work of associates (Todd E. Breuer and Jennifer Chung, respectively). See Doyle Decl. ¶¶ 1-5, 20-28. Those attorneys specialize in intellectual property litigation: Mr. Doyle has been practicing in that area since 1994; Mr. Breuer and Ms. Chung have several years' experience in intellectual property law. See Doyle Decl., Ex. A-C.

Microsoft contends that AVH's rates fall within the range of fees approved by the Southern District of New York for New York City firms that handle intellectual property

cases.  See Pl. Mem. at 17; Stevens, 2002 WL 31387224, at *5 (finding, in 2002, that billing

rates for partners, associates and paralegals of $460 per hour, $330 per hour and $135 per

hour respectively were reasonable for a law firm in the New York City area); Yurman

Designs, Inc. v. PAJ, Inc., 125 F.Supp.2d 54, 58 (S.D.N.Y. 2000) (approving partner rate of

$520.69 per hour in 1999 and 2000 for attorneys handling copyright and trademark

infringement litigation).  As Microsoft further notes, a number of recent decisions in

intellectual property cases from this district have held that similar rates are appropriate for

attorneys involved in intellectual property litigation because these rates are within the range

charged in the New York City market.  See Pl. Mem. at 17-18; Entral Group v. Sun Sports,

2007 WL 2891419, at *10 (finding partner rate of $560 and associate rates of $360 and $340

to be reasonable in copyright infringement case); BMG Music v. Pena, 2007 WL 2089367, at

*7 (finding partner rate of $325 and associate rate of $250 per hour to be reasonable in

copyright infringement case); but see Atlantic Recording Corp. v. Elizabeth Records, Inc., No.

05-CV-2309 (SLT), 2006 WL 1027151, at *1-2 (E.D.N.Y. Apr. 14, 2006) (awarding hourly

rates of $250 for a partner, $150 for an associate and $70 for a paralegal).

        In the abstract, the hourly rates charged by AVH, while on the high side, fall within the

range awarded in New York City for cases of this kind; Microsoft should not be penalized for

having retained experienced intellectual property counsel from Manhattan to litigate just across

the river in Brooklyn federal court.  Moreover, having considered the relevant *Johnson*

factors,[12] the Court notes that this action has been litigated for nearly two years, and while the questions presented may not be difficult, they are not simplistic, either. Plaintiffs' counsel vigorously and effectively prosecuted this action against recalcitrant defendants.

Nevertheless, while the hourly rates charged by AVH are not unreasonable *per se*, its staffing of the case resulted in an unreasonable allocation of the litigation tasks involved. The Court has reviewed AVH's documentation establishing the number of hours expended, including unredacted time sheets that have been submitted for *in camera* review. <u>See</u> Doyle Decl. ¶¶ 24-28, Ex. E, F.[13] For nearly the first year of this case, the litigation was handled virtually single-handedly by James Doyle, a partner and the most senior attorney assigned to the case. With the exception of the last couple of months billed, Mr. Doyle performed nearly all the routine daily litigation tasks in this action.

Thus, Mr. Doyle billed at a partner's rate for a variety of tasks that could have been performed by an associate or even clerical staff. <u>See</u>, <u>e.g.</u>, Doyle Decl., Ex. E, 3/28/06 entry (1.5 hours, or $675, for finalizing, filing and serving summons and complaint), 4/5/06 entry (0.10 hours, or $45, for, *inter alia*, filing proof of service); 10/23/06 entry (1.0 hour, or $450, for finalizing and serving discovery); 12/13/06 entry (0.20 hours, or $90, for serving default papers); 1/9/07 entry (0.20 hours, or $150, for serving discovery); 2/10/07 entry (1.5 hours, or $750, for serving notices of deposition and requesting extension of discovery); 2/27/07

---

[12] As Microsoft has not addressed all the factors, the Court has only limited information.

[13] In the Second Circuit, contemporaneous time-records specifying relevant dates, time spent and work done must be produced in fee applications. <u>See</u> <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983); <u>Broadcast Music, Inc. v. R Bar of Manhattan, Inc.</u>, 919 F.Supp. 656, 661 (S.D.N.Y. 1996).

entry (0.3 hours, or $150, for filing proof of service).  While hourly rates of $450 or $500 may be appropriate for a partner supervising the work of other legal professionals, most of the tasks performed by Mr. Doyle do not warrant so high a rate.  See Cohen v. W. Haven Bd. of Police Comm'rs, 638 F.2d 496, 505 & n.14 (2d Cir. 1980) ("a different rate of compensation may well be set for different types of litigation tasks"); see also Bridges v. Eastman Kodak Co., No. 91 Civ. 7985 (RLC), 1996 WL 47304, at *9 (S.D.N.Y. Feb. 6, 1996) (reducing hourly rate by 50 percent for time devoted to legal research); Jennette v. City of N.Y., 800 F.Supp. 1165, 1170 (S.D.N.Y. 1992) (same); cf. Video Aided Instruction, Inc. v. Y&S Express, Inc., No. 96 CV 518 CBA, 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (reducing partner's hours by 50% where his level of involvement in the case was excessive "in light of [his] qualifications and experience").

Similarly, Todd Breuer, an associate who commanded an hourly rate of $385, billed for work that a more junior attorney or paralegal could have handled.  See Doyle Decl., Ex. E, 4/20/07 entry (0.7 hours, or $269.50, to contact clerk's office regarding absence of entry on docket sheet).  Therefore, this Court concludes that most of the time charges in this case have been billed at an excessive rate.  See, e.g., Davis v. N.Y. City Housing Auth., 90 Civ. 628 (RWS), 2002 WL 31748586, at *3-4 (S.D.N.Y.  Dec. 6, 2002) (substantially discounting attorney's rate for work, such as preparing exhibits and proofreading, that could have been done by paralegal); see also Bridges, 1996 WL 47304, at *7 (disallowing time charges for "clerical and administrative tasks," which "are normally subsumed into an attorney's overhead expenses."), aff'd, 102 F.3d 56, 59 & n.2 (2d Cir. 1996).  As detailed hereinafter, see infra

page 33, AVH's fees should be significantly reduced.

## B. Time Charges

The second component in the fee award analysis involves assessing the reasonableness of the time expended and adjusting those parts of an invoice that reflect "excessive, redundant or otherwise unnecessary" hours. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Courts are "presumed to be knowledgeable as to the reasonable time and the number of attorneys required to perform services competently and effectively . . . ." Blank v. Talley Indus., Inc., 390 F.Supp. 1, 4 (S.D.N.Y. 1975).

Having reviewed the time records, the Court concludes that Mr. Doyle spent an excessive amount of time composing a two-page letter to the Court requesting an extension of the discovery deadline. See Doyle Decl. Ex. E, 2/12/07 entry (0.5 hours, or $250); 2/13/07 entry (0.5 hours, or $250); 2/19/07 entry (0.5 hours, or $250); 2/20/07 entry (0.4 hours, or $200); see 2/20/07 Letter to the Court from James P. Doyle. Additionally, many of AVH's time entries are in the form of so-called block entries, containing descriptions of more than one task.[14] By grouping together various tasks in a single entry, Microsoft's counsel has made more difficult the Court's assessment of the reasonableness of the time spent on each specific task. Courts have not hesitated to reduce fee awards for this reason. See, e.g., Skold v. Am. Int'l Group, Inc., No. 96 Civ. 7137 HB, 1999 WL 672546, at *2 (S.D.N.Y. Aug. 25, 1999)

---

[14] For example, an entry for 7.5 hours of work performed on April 17, 2007 by attorney Todd Breuer reads as follows: "Obtain and review bills to date; create excel spreadsheet summarizing attorneys' fees and costs; draft J. Doyle declaration in support of motion for default judgment; perform legal research regarding recovery of attorney's fees and costs in 2nd Circuit, Eastern and Southern Districts of New York." Doyle Decl. Ex. E.

(reducing fees by ten percent where attorneys submitted several time entries consisting of multiple tasks, as court was unable to assess the reasonableness of the time spent on each task); Gilmore v. Bergin, No. CIV.3:95CV01838(DFM), 1998 WL 1632526, at *9 (D. Conn. Sept. 22, 1998) (reducing fees by fifteen percent where the entries were vague and several entries contained multiple tasks); see also Wilder v. Bernstein, 975 F.Supp. 276, 286 (S.D.N.Y. 1997) (attorneys should not "lump several services or tasks into one time sheet entry because it is then difficult . . . for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided . . . . [I]t is the responsibility of the [fee] applicant to make separate time entries for each activity.") (internal quotations and citation omitted).

Taking into account all of the issues detailed above, this Court would reduce the total attorneys' fees by one-third. This Court therefore recommends an award of $22,243 in attorneys' fees, a reasonable sum given the skill and experience required, the work performed and the results achieved.

## C. Costs

The issue of costs is the final matter. Courts routinely award costs to prevailing parties in copyright cases, although they are not required to do so. Antenna Television, A.E. v. Aegean Video, Inc., No. 95-CV-2328 (ERK), 1996 WL 298252, at *14 (E.D.N.Y. Apr. 23, 1996); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (explaining that "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" are recoverable in connection with attorney's fee awards) (internal quotation marks and citation omitted). These costs include filing fees. Peer Int'l Corp. v. Max Music & Entm't,

Inc., 03 Civ. 0996 KMWDF, 2004 WL 1542253, at *6 (S.D.N.Y. July 9, 2004).

Plaintiff has submitted a request to recover $500 in filing fees. Pl. Mem. at 16. An examination of AVH's invoice reflects that the $500 filing fee was for this case and one other matter. See Doyle Decl. Ex. E. Microsoft is entitled to the filing fee in this case only. At the relevant time, the filing fee was $350.

## CONCLUSION

For the foregoing reasons, this Court recommends that default judgments be entered against defendants, jointly and severally, awarding plaintiff statutory damages in the amount of $240,000, attorneys' fees in the amount of $22,243, and costs in the amount of $350.

Any objections the recommendations contained in this Report and Recommendation must be filed with the Honorable Sandra L. Townes on or before April 22, 2008. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Report and Recommendation into the Electronic Case Filing system and to transmit copies, via Federal Express, to defendants, at the following address:

> Mamun Ahmed
> Computer Care Center, Inc.
> 60-10C Kissena Boulevard
> Flushing, NY 11355

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**April 8, 2008**

> **ROANNE L. MANN**
> **UNITED STATES MAGISTRATE JUDGE**